W. Michael Moody
Christopher J. Slottee
ATKINSON, CONWAY & GAGNON
Attorneys for Gary Dunst
420 L Street, Suite 500
Anchorage, Alaska 99501-1989
Phone:  (907) 276-1700
Fax:  (907) 272-2082
wmm@acglaw.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) ) | Case No. A04-0272 CV (JWS) |
| Plaintiff, | ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANT GARY DUNST'S MOTION FOR ATTORNEY'S FEES** |
| vs. | ) ) | |
| GARY DUNST | ) ) | |
| Defendant. | ) ) ) | |

## I.    INTRODUCTION

Government Employees Insurance Company (GEICO) filed this declaratory

judgment action seeking to deny Gary Dunst underinsured or uninsured motorist

(UM/UIM) coverage for the severe injuries Dunst suffered in a motorcycle accident.  As a

result of the efforts of Dunst's attorneys, GEICO has now conceded that Dunst does have

$1,600,000 in UM/UIM coverage for his bodily injuries, plus supplemental payments.

Dunst is the prevailing party, entitled to an attorney's fee award under Alaska Civil Rule 82. Furthermore, the Court should award Dunst enhanced attorney's fees because of GEICO's unreasonable actions, the significance of the matters at stake, and the basic inequity of Dunst's insurance company suing its insured before the accident investigation was completed.

The parties have been unable to agree on the amount of attorney's fees and costs to be paid by GEICO. Therefore, pursuant to the Court's Order dated January 4, 2006 (Docket 26), Dunst submits this motion for attorney's fees.[1]

## II.     FACTUAL BACKGROUND

The genesis of this case was a serious motorcycle accident on June 3, 2004. The driver of a tan Ford Explorer turned in front of Dunst, causing Dunst to take evasive action to avoid a collision. Dunst suffered severe injuries, was hospitalized for more than thirty days, and incurred approximately $250,000 in medical bills.

At the time of the accident, Dunst was insured under three different GEICO policies: (1) a motorcycle policy with $300,000 in UM/UIM coverage; (2) an automobile policy with $300,000 in UM/UIM coverage; and (3) an umbrella policy with $1,000,000 in

---

[1] On December 30, 2005, the parties filed a Status Report informing the Court that they were attempting to resolve their dispute regarding attorney's fees and costs and that if they were unsuccessful, they would file motions addressing Gary Dunst's claim for attorneys' fees and costs. On January 4, 2006, the Court accepted the parties Status Report and directed the parties to proceed in accordance with that Status Report. See Court's Order dated January 4, 2006 (Docket 26). This motion addresses only Dunst's claim for attorney's fees. Contemporaneously with this motion, Dunst has filed a separate motion, with a cost bill, seeking an award of costs incurred in this action.

UM/UIM coverage. In addition to their facial limits, all of these policies provided coverage for supplemental payments (Alaska Rule 82 attorney's fees and costs).

The driver of the Ford Explorer stopped at the scene and was interviewed by at least one police officer. Unfortunately, the accident investigation report by the Anchorage Police Department (APD) failed to document the identity of the driver of the Ford Explorer. Seizing upon this fact, GEICO sued Dunst six months after the accident, seeking a declaration that his motorcycle policy and his umbrella policy provided him no UM/UIM coverage for his injuries. See Complaint for Declaratory Judgment, filed January 4, 2005 (Docket 1).

The basis for GEICO's declaratory judgment action was the "hit and run" provision in Dunst's UM policy, which limited UM/UIM coverage where the negligent driver is unknown to cases involving physical contact between the negligent driver and the insured. GEICO contended that Dunst was not entitled to UM/UIM coverage in this case because there was no physical contact between the Explorer and Dunst and "Dunst has not ascertained the identity of the adverse driver or the adverse vehicle." Complaint for Declaratory Judgment, filed January 4, 2005 (Docket 1). GEICO did not assert any other basis for denying Dunst UM/UIM coverage.

GEICO filed this lawsuit after minimal investigation into Dunst's accident. All GEICO did was obtain the police report and photos, interview two witnesses, and make a couple of phone calls to APD. Exs. 1, 2, 3. Once it found information colorably

supporting its denial of coverage, GEICO did nothing else, choosing to shut down its investigation and sue Dunst. Exs. 1, 2, 3.

Dunst moved to dismiss GEICO's declaratory judgment action on the basis that this Court lacked jurisdiction because there was no actual case or controversy, arguing that the facts were hypothetical because investigation of the identity of the Explorer driver had not been completed. See Motion to Dismiss, dated December 3, 2004 (Docket 2). Although Dunst's motion to dismiss was denied, the Court did express concern over GEICO's rush to the courthouse, stating:

> While the court will hear this action, the court is concerned that Dunst be afforded adequate time to identify the other driver. Dunst should have more time to discover the other driver's identity, because discovery of her identity could change the outcome of this action.

(Order dated February 25, 2005, p. 7) (Docket 16). For those reasons, the Court stayed GEICO's declaratory judgment action to permit Dunst to conduct the investigation that GEICO should have done before filing its lawsuit. (Order dated February 25, 2005, p. 8) (Docket 16).

The efforts of Dunst's attorneys proved fruitful as the driver of the Ford Explorer, Amanda Torres, was found. Her name, address, driver's license number and telephone number were found in the officer's notebook of Sgt. Rohwer, one of the APD personnel who had responded to the accident and spoken with Ms. Torres.

After finding Ms. Torres, Dunst answered GEICO's complaint and filed a counterclaim, seeking a declaration that his motorcycle, automobile, and umbrella policies all

provided him with UM/UIM coverage for his accident.  <u>See</u> Answer and Counterclaim

dated June 24, 2005 (Docket 18).  At a deposition attended by counsel for GEICO,

Ms. Torres admitted that she was driving the Ford Explorer at the time of the accident and

that she did not have liability insurance.

GEICO has conceded every issue relating to coverage raised by its Complaint

and Dunst's counterclaim.[2]  GEICO has conceded that the hit and run provisions of

Dunst's UM/UIM policies do not apply.  Ex. 4.  GEICO has conceded that Dunst's

umbrella policy provides UM/UIM coverage pursuant to <u>Holderness v. State Farm Fire and</u>

<u>Cas. Co.</u>, 24 P.3d 1235 (Alaska 2001) and AS 21.89.020.  Ex. 4.  Finally, GEICO has

conceded that Dunst's motorcycle, automobile, and umbrella policies may be stacked, for a

total of $1,600,000, plus supplemental payments, in UM/UIM coverage available to Dunst

for his injuries from this accident.  Ex. 5.

Although GEICO conceded these issues, it did so only begrudgingly.  Most

remarkably, GEICO stated false facts to claim that Dunst could not stack his motorcycle

and automobile UM/UIM policies because of AS 28.20.445.  <u>See</u> Ex. 6.  AS 28.20.445(c)

permits an insurer to prohibit stacking of policies issued by the **same insurer**.

AS 28.20.445(c).  <u>See</u> <u>also</u> Ex. 7.  To claim that Dunst's motorcycle and automobile

UM/UIM policies could not stack, GEICO asserted that both policies were written by the

---

[2] GEICO has not filed a reply to Dunst's counterclaim because Dunst agreed to extend the
time for GEICO to respond while Dunst investigated the identity of the Explorer driver.

same insurance company.  Ex. 6.  To the contrary, GEICO **knew** that Dunst's motorcycle and automobile policies were issued by two different insurers.

GEICO's actual knowledge, and resulting intentionally false claim, is shown by several sources.  First, GEICO itself established three separate corporations for its own business purposes.  GEICO's own documents shows that it considers GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company to be different insurers.  Ex. 8.[3]  According to GEICO, GEICO General Insurance Company provides coverage for "preferred-risk drivers."  Ex. 8.  GEICO Indemnity Company provides coverage for "standard-risk drivers."  Ex. 8.  GEICO Casualty covers "non-standard  risk drivers."  Ex. 8.

Second, the various GEICO corporations make separate filings with the State of Alaska, Division of Insurance, and are treated as distinct insurers by the State of Alaska.  Exhibit 9 is a copy of several webpages for the State of Alaska, Department of Insurance.  It shows that, according to the State of Alaska, GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company are different insurance companies.  Ex. 9.  Each GEICO insurance company has been issued a unique Alaska identification number.  Ex. 9.  Each GEICO insurance company also has a unique National Asociation of Insurance Commissioners identification number.  Ex. 9.  In determining the market share of every property and casualty insurer, the State of Alaska considers GEICO Casualty

---

[3] Exhibit 8 is a copy of a page from GEICO's website.

Company, GEICO General Insurance Company, and GEICO Indemnity Company to be

different insurance companies.  Ex. 10.[4]

      Third, the Ninth Circuit has recognized that GEICO General Insurance

Company and GEICO Indemnity Company are different insurers.  Reynolds v. Hartford

Financial Services Group, Inc., 426 F.3d 1020, 1027 (9th Cir. 2005).  In Reynolds, the Ninth

Circuit noted that while GEICO General Insurance Company and GEICO Indemnity

Company are affiliated with each other, they are separate subsidiaries of GEICO, insure

different risks, and issue separate  policies.  Id. at 1028.  See also Edo v. GEICO Cas. Co.,

2004 WL 3639689, *1 (D.Or. Feb. 23, 2004).  In fact, in Reynolds, GEICO General

Insurance Company argued that it was not liable because the plaintiff had been insured by

GEICO Indemnity Company and not by GEICO General Insurance Company.  Reynolds,

426 F.3d at 1034-35.[5]  Reynolds demonstrates that GEICO General Insurance Company

considers policies issued by GEICO Indemnity Company to be policies issued by a different

company, at least when it suits GEICO's purposes.

      GEICO clearly knew that the auto policy was issued by GEICO General

Insurance Company and the motorcycle policy was issued by GEICO Indemnity Company.

---

[4] Exhibit 10 is a report downloaded from the State of Alaska, Division of Insurance website.

[5] In Reynolds, the plaintiff sued GEICO General Insurance Company and GEICO
Indemnity Company for violating the Fair Credit Reporting Act after he was charged a
higher premium because of his credit rating.  Id.  GEICO Indemnity Company argued that
only the insurer who issued the policy to the plaintiff could be liable under the Fair Credit
Reporting Act.  Id.  The Ninth Circuit rejected GEICO General Insurance Company's
arguments based on the provisions of the Fair Credit Reporting Act.  Id.

Despite that knowledge, GEICO still attempted to avoid coverage by falsely stating that the auto and motorcycle policies were issued by the same insurer. Ex. 6. When counsel for Dunst confronted GEICO with the truth, GEICO admitted that the policies could be stacked. See Exs. 5, 7. GEICO's subterfuge had failed.

In summary, this case began with GEICO filing a lawsuit seeking a declaratory judgment that Dunst was entitled to absolutely no UM/UIM coverage. The case ended with GEICO admitting that Dunst was entitled to $1,600,000 in UM/UIM coverage plus supplemental payments. Dunst has prevailed on literally every substantive issue upon which he could possibly prevail.

## III.    ARGUMENT

At a minimum, Dunst is entitled to twenty percent of his actual attorney's fees. In this case, however, he should be awarded enhanced fees because of GEICO's unreasonable actions in this case, the significance of the matters at stake, and basic equitable considerations under Civil Rule 82. GEICO rushed to sue its insured, lost on every issue, and has been forced to concede that Dunst is entitled to $1,600,000 in UM/UIM coverage.

### A.    ALASKA CIVIL RULE 82 GOVERNS IN THIS CASE.

GEICO sued Mr. Dunst based on diversity jurisdiction. See First Amended Complaint, ¶ 4 (Docket 7). Therefore, Civil Rule 82 applies. Klopfenstein v. Pargeter, 597 F.2d 150, 157 (9th Cir. 1979). See also Ryan v. Sea Air, Inc., 902 F. Supp. 1064, 1070 (D.Alaska 1995) (Alaska Civil Rule 82 is binding on diversity cases brought in Alaska's federal court).

### B.    DUNST IS ENTITLED TO AT LEAST 20% OF HIS ACTUAL ATTORNEY'S FEES.

Alaska Civil Rule 82 provides that "[i]n cases in which the prevailing party recovers no money judgment . . . the court shall award the prevailing party in a case resolved without trial 20% of its actual attorney's fees which were necessarily incurred." Alaska Civil Rule 82(b)(2). "[T]he prevailing party is the one 'who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.'" Day v. Moore, 771 P.2d 436, 437 (Alaska 1989) (quoting Adoption of V.M.C., 528 P.2d 788, 795 n.14 (Alaska 1974)). Moreover, a court need not apportion fees between issues in a case. Tenala, Ltd. v. Fowler, 993 P.2d 447, 450 (Alaska 1999). Rather, the party who prevails on the dispositive issue is entitled to reasonable fees and costs for the entire case calculated according to the trial court's discretion. See also Gold Bondholders Protective Council v. Atchison, Topeka and Santa Fe Railway Co.. 658 P.2d 776, 779 (Alaska 1983); Nielson v. Benton, 957 P.2d 971, 973 (Alaska 1998) ("courts need not apportion fees by issue in civil cases.") Even if a party loses a motion, attorney's fees may be awarded for work done in connection with that motion if the party prevails in the case. Belluomini v. Fred Meyer of Alaska, Inc., 993 P.2d 1009, 1017 (Alaska 1999) (fact that prevailing party's motions for summary judgment were unsuccessful did not prevent award of attorney's fees for those motions).[6]

---

[6] See also Gold Bondholders Protective Council v. Atchison, Topeka and Santa Fe Railway Company, 658 P.2d 776, 779 (Alaska 1983) ("Rule 82(a) does not require that attorneys' fees

Dunst is clearly the prevailing party. The main issue in this action was whether Dunst was entitled to UM/UIM coverage. GEICO contended that Dunst was not entitled to **any** UM/UIM coverage. See Complaint for Declaratory Judgment, filed January 4, 2005 (Docket 1). Dunst contended that he was entitled to UM/UIM coverage under his motorcycle, automobile, and umbrella policies. See Answer and Counterclaim dated June 24, 2005 (Docket 18). GEICO has conceded that Dunst was correct and that he is entitled to UM/UIM under all three of his policies. See Exs. 4, 5. Consequently, not only is he the prevailing party, Dunst prevailed on every substantive issue in this litigation.

In the course of this litigation, Dunst incurred $36,458.75 in attorney's fees. See Affidavit of W. Michael Moody. An itemization of the attorney's fees incurred in this matter is attached to the Affidavit of W. Michael Moody.[7] $10,000 is for time spent by attorney W. Michael Moody. $13,101 is for time spent by attorney Christopher J. Slottee. $13,357.75 is for time spent by Lew Baker, a paralegal, which is recoverable under Alaska Civil Rule 82(b)(2) ("The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal, or

---

be calculated with reference to the disposition of individual issues. Rather, it expressly provides that a reasonable award of fees shall be made, at the trial court's discretion, to the prevailing party. The clear meaning of that provision is that the party who prevails on the principal dispositive issue is entitled to reasonable costs calculated according to the trial court's discretion.") (emphasis omitted).

[7] Given the ongoing litigation with GEICO, and the fact that GEICO has yet to adjust Dunst's UM/UIM claim, the billing records for Dunst's attorneys have been redacted and modified to remove privileged material that is irrelevant to this fee application.

law clerk.")  The bulk of Mr. Baker's time was spent conducting research and investigation into the identity of the driver of the Ford Explorer.

Therefore, because he is the prevailing party, Dunst is presumptively entitled to 20% of his actual attorney's fees of $36,458.75.  Alaska Civil Rule 82(b)(2).  Twenty percent of Dunst's actual attorney's fees is $7,291.75.

### C.    THE COURT SHOULD AWARD DUNST ENHANCED ATTORNEY'S FEES.

Alaska Civil Rule 82  permits the Court to award more than 20% of Dunst's actual attorney's fees.  Alaska Civil Rule 82(b)(3) states:

> The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
>
> (A)    the complexity of the litigation;
>
> (B)    the length of trial;
>
> (C)    the reasonableness of the attorneys' hourly rates and number of hours expended;
>
> (D)    the reasonableness of the number of attorneys used;
>
> (E)    the attorneys' efforts to minimize fees;
>
> (F)    the reasonableness of the claims and defenses pursued by each side;
>
> (G)    vexatious or bad faith conduct;
>
> (H)    the relationship between the amount of work performed and the significance of the matters at stake;
>
> (I)    the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J)    the extent to which the fees incurred by the prevailing
party suggest they had been influenced by
considerations apart from the case at bar, such as a
desire to discourage claims by others against the
prevailing party or its insurer; and

(K)    other equitable factors deemed relevant.

Alaska Civil Rule 82(b)(3).  If any of the above factors justifies departure from the schedule

of fees, the court may base its decision on that one factor.  Tenala, Ltd. v. Fowler, 993 P.2d

447, 451 (Alaska 1999) ("If one or more Rule 82(b)(3) factors justifies departure from the

schedule for fee awards, the trial court may base its decision on those factors, without

specifically explaining why the other factors are not relevant.") (quoting Osborne v. Hurst,

947 P.2d 1356, 1362 n.3 (Alaska 1997)).  Furthermore, the Court has broad discretion to

award attorney's fees in amounts exceeding those prescribed by Alaska Civil Rule 82, so long

as the Court specifies in the record its reasons for departing from the schedule.  Id.

This case clearly warrants an award of enhanced attorney's fees.  First,

GEICO actions in this case were unreasonable.  See Alaska Civil Rule 82(b)(3)(F).  Second,

the significance of what was at stake merits an award of enhanced attorney's fees.  See

Alaska Civil Rule 82(b)(3)(H).  Third, basic equity requires that Dunst receive an award of

enhanced attorney's fees.  See Alaska Civil Rule 82(b)(3)(K).

1.    GEICO's Unreasonable Conduct Warrants Enhanced
Attorney's Fees.

GEICO's actions must be evaluated from the perspective that it  had a duty to

"diligently search for evidence which supports its insured's claim."  Great Divide Ins. Co. v.

Carpenter, 79 P.3d 599, 608 (Alaska 2003).  GEICO could not "with impunity reserve its

rights regardless of what a proper investigation might show concerning coverage. . . ." <u>Id.</u>
Failing to fulfill those duties, GEICO denied coverage at the earliest opportunity, seeking to
deprive Mr. Dunst of more than $1,600,000 in UM/UIM benefits promised him in return
for the premium dollars he paid. Those premium dollars also paid for claim service GEICO
was duty bound to provide, including a full, fair and objective investigation. <u>See</u> <u>Great</u>
<u>Divide Ins. Co.</u>, 79 P.3d at 608; AS 21.36.125.

        Instead of conducting the thorough investigation its fiduciary duty mandated,
GEICO sent Dunst a reservation of rights letter disclaiming coverage within three months
of Dunst's accident and sued Dunst three months later. Both of these acts occurred before
any diligent investigation of Mr. Dunst's accident had been completed. Ignoring its duty,
GEICO claimed that Dunst had the duty to investigate. Ex. 1. <u>See</u> <u>also</u> GEICO's
Opposition to Plaintiff's Motion to Dismiss (Docket 5). That assertion was directly contrary
to Alaska law. <u>See</u> <u>Great Divide Ins. Co.</u>, 79 P.3d at 608.

        The unreasonableness of GEICO's preemptive suit against Dunst is shown by
the fact that the "investigation" GEICO did was minimal. GEICO looked at the police
photographs and report, talked to two witnesses from the scene, and made a couple of
phone calls to APD. Exs. 1, 2, 3. Nothing more. Exs. 1, 2, 3. Once it found evidence
supporting its denial of coverage, GEICO made the self-serving decision to shut down its
investigation rather than consider the best interest of its insured by pursuing all avenues of
investigation, like Dunst did. Exs. 2, 3.

The unreasonableness of GEICO's premature lawsuit is further illustrated by the fact that a reasonable investigation revealed the identity of the Explorer driver. GEICO is one of the largest insurers in the United States. Yet, without the vast resources of a major insurer, Dunst's attorneys found the driver of the Ford Explorer. Dunst's attorneys were successful because they did the diligent investigation GEICO should have done in the first place. In effect, Dunst and his attorneys did GEICO's work for it. GEICO should pay for that work, done because GEICO shirked its duty. See Great Divide Ins. Co., 79 P.3d at 608. Dunst should not be penalized by having to incur significant legal fees to defend a hasty and premature declaratory judgment action.

The unreasonableness of GEICO's position is further shown by the meritless positions it advanced to try to deny Dunst the coverage due him. GEICO advanced two claims that were unsupportable and contrary to clear Alaska law. The first was GEICO's claim that there was no UM/UIM coverage under Dunst's umbrella policy. That claim for relief was contrary to clear Alaska law. The Alaska Supreme Court had held that AS 21.89.020(c)(1) requires an umbrella policy that provides motor vehicle liability coverage to also provide an equal amount of UM/UIM coverage. Holderness v. State Farm Fire and Cas. Co., 24 P.3d 1235, 1241 (Alaska 2001). That rule had been the law of Alaska for **three years** before GEICO filed its complaint against Dunst.[8] Id.

---

[8] When Dunst's counsel confronted GEICO with this clear law, GEICO filed its Amended Complaint to drop that claim for relief. GEICO, however, retained some allegations relating to Dunst's umbrella policy. See First Amended Complaint for Declaratory Judgment, filed January 4, 2005 (Docket 7). The purpose of those allegations is unclear. They appear to have been an oversight.

The second meritless position taken by GEICO was in response to Dunst's counterclaim regarding his automobile policy. As discussed above, GEICO asserted that Dunst's auto policy could not be stacked on top of his motorcycle policy, claiming the policies were written by the same company. See supra pp. 5-7. GEICO's position was not only unreasonable, it was dishonest. GEICO knew that Dunst's motorcycle and automobile policies were issued by two different insurers. Exs. 8, 9, 10. GEICO itself created the two different entities, treats them as two different entities,[9] and uses them to write different risks with different premium rates. Exs. 8, 9, 10. See also Reynolds, 426 F.3d at 1034-35; Edo, 2004 WL 3639689 at *1. Despite that actual knowledge, GEICO denied coverage by falsely claiming that the two policies were issued by the same insurer. Ex. 6. Its unreasonable, dishonest claim justifies an award of enhanced attorney fees.

## 2. THE SIGNIFICANT ISSUES UPON WHICH DUNST PREVAILED WARRANT ENHANCED ATTORNEY'S FEES.

The significance of the matters at stake also warrants an award of enhanced attorney's fees. See Alaska Civil Rule 82(b)(3)(H). The goal of GEICO's lawsuit was to deprive Dunst of more than $1,600,000 of coverage. GEICO knew Dunst had suffered severe, disabling injuries, including brain damage, in the motorcycle accident. GEICO filed the declaratory judgment action to deny him any UM/UIM coverage for those injuries. Due to the efforts of Dunst's attorneys, GEICO has now conceded that Dunst is entitled to

---

[9] Alaska law provides that these entities are distinct and GEICO cannot pierce their separate identities when it chooses. Marine Solution Services, Inc. v. Horton, 70 P.3d 393, 402 (Alaska 2003) (corporation may not disavow its statutes when convenient or to avoid litigation).

$1,600,000 in UM/UIM coverage, plus supplemental payments. Exs. 4, 5. This lopsided victory on such significant issues strongly favors an award of a large portion of Dunst's actual attorney's fees.

To put Dunst's request for enhanced fees in perspective, the Court may consider the magnitude of the amounts GEICO has conceded. Dunst has established the right to coverage in excess of $1,600,000 for his injuries. If this had been an action against GEICO for damages in that amount, Dunst would be entitled to fees of approximately ten percent of the recovery, i.e. $160,000. Alaska Civil Rule 82(b)(1). Dunst is not suggesting such an award in the present circumstance, but presents that fact merely to illustrate the significance of the issues resolved here in Dunst's favor and the reasonableness of the enhanced fees requested.

### 3. EQUITABLE FACTORS JUSTIFY AN AWARD OF ENHANCED ATTORNEY'S FEES.

Basic equity militates in favor of awarding Dunst enhanced attorney's fees. See Alaska Civil Rule 82(b)(3)(K). GEICO owed Dunst fiduciary duties. See O.K. Lumber Co. v. Providence Washington Ins. Co., 759 P.2d 523, 525 (Alaska 1988). Dunst bought UM/UIM insurance from GEICO to protect himself. Neither Dunst or any other insured expects his insurer to deny coverage without knowing all of the facts, race to the courthouse at the first opportunity, and sue him before the investigation into his accident was even completed. GEICO cannot be permitted to burden Dunst with the expense of defending a declaratory judgment suit based on an inadequate investigation and then pay only 20% of Dunst's attorney's fees. Dunst would not have incurred any attorney's fees defending a

declaratory judgment action but for GEICO's rush to protect its own interest rather than

protecting the interest of an insured to whom it owed special fiduciary duties.

### 4.    AN AWARD OF ENHANCED ATTORNEY'S FEES IS JUSTIFIED AND APPROPRIATE.

Any one of these factors justifies an award of enhanced attorney's fees.

Tenala, Ltd., 993 P.2d at 451.  Taken together, GEICO's unreasonable actions, the

significance of the matters at stake, Dunst's complete victory on every issue, and GEICO's

disregard of the fiduciary duties it owed Dunst, all favor an award of most of Dunst's actual

attorney's fees.  Dunst submits that, under the facts of this case, an award of 75% of Dunst's

actual attorney's fees is warranted.

Dunst is not asking that full fees be awarded, but these facts would justify

such an award.  Full attorney's fees may be awarded against a party who engages in vexatious

or bad faith conduct.  Alaska Civil Rule 82(b)(3)(G); Garrison v. Dixon, 19 P.3d 1229, 1234-

35 (Alaska 2001).  The fact a party's allegations stated a claim for relief does not preclude a

fee award based on vexatious or bad faith conduct.  Id. at 1234-35.  Even if valid claims are

plead, vexatious or bad faith conduct in the litigation justifies the award of full fees.  Id.

As discussed above, GEICO took two positions in this case that were

unfounded.  First, GEICO's claim of no coverage under the umbrella policy was contrary to

clear Alaska law.  Second, to claim that the auto policy coverage could not be stacked

GEICO asserted facts GEICO **knew** were false.  Such misconduct may fairly be described

as vexatious, bad faith conduct.  To simplify this motion, however, Dunst is not requesting

full attorney's fees because the Alaska Supreme Court has held that an award of 75% of a

party's actual attorney's fees is proper without a finding of vexatious or bad faith conduct. Cole v. Bartels, 4 P.3d 956, 961 (Alaska 2000).

In Cole, a home buyer sued the former owner for failing to disclose the presence of rot in the home. Id. at 958. The former owner then brought a third-party claim against a carpenter, claiming that the carpenter had failed to disclose the rot to her before she sold the home. Id. After the jury found for the home buyer and the carpenter, the court awarded them 75% of their actual attorney's fees. Id. The Alaska Supreme Court affirmed the award of attorney's fees, finding it justified because the former owner did not have a reasonable basis for her claims against the carpenter and because the former owner had unreasonably complicated the trial. Id. at 960-61. The court reasoned that asserting unreasonable claims justified an award of 75% of the prevailing party's attorney's fees. Id. The court also held that such an award did not require vexatious or bad faith conduct because it was not a "substantially full award" of attorney's fees. Id. at 961.

In Nielson v. Benton, 957 P.2d 971 (Alaska 1998), the court affirmed an award of 50% of the prevailing party's attorney's fees. Id. at 973. The plaintiff sued the defendant for breaching a contract to buy a home, seeking both damages and specific performance. Id. The defendant counterclaimed for misrepresentation, and sought to rescind the contract. Id. The court ultimately rescinded the contract and denied all of the parties' other claims. Id. The Alaska Supreme Court affirmed the trial court's decision to award the defendant 50% of his actual attorney's fees, reasoning that the plaintiff "brought a weak claim, 'unfairly sought to pressure [the defendants] by applying for a prejudgment writ

of attachment,' pursued a weak specific performance demand for an extended period, and maintained a high level of litigation relative to the amount of money at stake." Id. As such, an "award of fifty percent of actual reasonable attorney's and paralegal fees under these circumstances is not 'manifestly unreasonable.'" Id.

Finally, in Kenai Peninsula Borough v. English Bay Village Corp., 781 P.2d 6 (Alaska 1989), the Alaska Supreme Court again affirmed an award of 50% of the prevailing party's attorney's fees. Id. at 12. The court affirmed the award because "[t]he objective of Rule 82 is to provide the prevailing party with reasonable partial compensation. The award of just over fifty percent of English Bay's actual fees is consistent with this purpose and not an abuse of discretion." Id. (internal citation omitted).

These cases demonstrate that an award of 75% of Dunst's actual attorney's fee is justified in this case. GEICO's arguments and actions in this case were clearly unreasonable. Furthermore, an award of enhanced attorney's fees in this case would further the partial compensation objective of Civil Rule 82, as recognized by Kenai Peninsula Borough. Such an award would help mitigate the harm to Dunst for having to defend the hasty and unjustified lawsuit brought by GEICO.

Finally, an award of enhanced attorney's fees would reaffirm the clear principle that GEICO has a duty to give the interests of its insured at least as much consideration as it gives its own interests. See e.g. Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 659 (Cal. 1958) ("The insurer, in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much

consideration as it does to its own interest.") (cited with approval by <u>State Farm Fire & Cas.</u>

<u>Co. v. Nicholson</u>, 777 P.2d 1152, 1155 n. 4 (Alaska 1989)).  <u>See also</u> <u>Egan v. Mutual of</u>

<u>Omaha Ins. Co.</u>, 169 Cal.Rptr. 691, 695 (Cal. 1979) ("the insurer, when determining whether

to settle a claim, must give at least as much consideration to the welfare of its insured as it

gives to its own interests.").  GEICO clearly needs to learn the need to comply with its duty

of good faith.

**IV.    CONCLUSION**

Dunst is the prevailing party in this litigation.  He incurred $36,458.75 in

actual, reasonable attorney's fees.  He is presumptively entitled to 20% of these attorney's

fees.  Under the facts of this case, however, an award of enhanced attorney's fees is justified

given the unreasonable positions taken by GEICO, the significance of the matters at stake,

Dunst's complete victory, and the fact that GEICO rushed to the courthouse  while ignoring

the fiduciary duties it owed Dunst .  Therefore, Dunst requests an award of 75% of the

actual attorney's fees he incurred in this matter, or $27,344.

DATED this 24th day of January, 2006.

ATKINSON, CONWAY & GAGNON
Attorneys for Gary Dunst


By_____s/ Christopher J. Slottee_____
        Christopher J. Slottee
        420 L Street, Suite 500
        Anchorage, AK 99501
        Phone:  (907) 276-1700
        Fax:  (907) 272-2082
        E-mail:  cjs@acglaw.com
        ABA No. 0211055

I certify that on January 24, 2006,
a copy of the foregoing document
was served electronically on:

Mark E. Wilkerson, Esq.


By    s/ Christopher J. Slottee