BRUCE E. GAGNON
ROBERT J. DICKSON
W. MICHAEL MOODY
PATRICK B. GILMORE
RICHARD E. VOLLERTSEN
NEIL T. O'DONNELL
JEROME H. JUDAY
DANIEL F. FITZGERALD
CHRISTOPHER J. SLOTTEE

LAW OFFICES OF
ATKINSON, CONWAY & GAGNON, INC.
A PROFESSIONAL CORPORATION
420 L STREET
SUITE 500
ANCHORAGE, ALASKA 99501

TELEPHONE:
(907) 276-1700

TELECOPIER/FACSIMILE:
(907) 272-2082

OF COUNSEL
JOHN M. CONWAY
KENNETH R. ATKINSON

October 6, 2005

**HAND DELIVERED**

Mark E. Wilkerson, Esq.
Wilkerson, Hozubin & Burke
310 K Street, Suite 405
Anchorage, AK 99501

Re:   Dunst/GEICO

Dear Mr. Wilkerson:

Your letter dated September 22, 2005, stated GEICO's basis for denial of UIM coverage to Mr. Dunst under his automobile policy. Having reviewed the two policies referenced in the letter, it is clear that there is coverage under the automobile policy.

GEICO's analysis to justify its denial of coverage is curious in several regards. It starts by quoting the statute, but then fails to quote a policy provision that would allow GEICO to limit coverage as allowed by the statute. Instead, GEICO merely cross-references the statute. The obvious reason for this sleight of hand is that the policy provision does not expressly limit coverage. An express limitation would state that the coverage "shall" be limited. Rather, the policy parrots the permissive language of the statute, which merely states that "the maximum amount payable *may* be limited to the highest limit of any one coverage under the policies." This permissive language falls far short of an express limitation. It will be construed strictly against the insurer and liberally in favor of coverage. It does not support the denial.

Apparently recognizing the deficiency in the auto policy, GEICO then quotes the Cycle-Gard policy in an attempt to justify its assertion that there is no coverage under the auto policy. The first deficiency with this position is that coverage under the auto policy is based on the language of the auto policy alone. The second deficiency is that the language quoted from the motorcycle policy contains its own ambiguity. It states that when there are multiple policies, "the maximum amount payable is limited to the highest limit of any one coverage under *the policy*." Given the context of multiple policies, this reference to "the policy" is vague and ambiguous. It does not define or clearly state which policy is being addressed. Again, this ambiguity will be construed in Mr. Dunst's favor to find coverage.

Exhibit 7
Page 1 of 3 Pages

Mark E. Wilkerson, Esq.
October 6, 2005
Page 2

We need not dwell upon those ambiguities, however, because there is a far more basic reason GEICO's denial of coverage is wrong. AS 28.20.445(c), the statute upon which GEICO relies, allows an insurer to limit coverage only where the insured is covered as a named insured under more than one policy issued by that insurer. It states:

> (c)   If a person is entitled as a named insured to uninsured or underinsured motorist coverage under more than one motor vehicle policy issued by the same insurer, the maximum amount payable may be limited to the highest limit of any one coverage under the policies.

GEICO's denial of coverage on the basis of this statute is unjustified because the auto policy and the motorcycle policy were not written by the same insurer. The motorcycle policy was written by GEICO Indemnity Company, but the auto policy was written by GEICO General Insurance Company. GEICO created these two separate insurance companies, had them admitted separately to write policies in Alaska, uses them to write different types of risks, and clearly knows the difference between the two companies. It obviously hoped that Mr. Dunst would not realize the difference and accede to GEICO's wrongful denial of coverage.

This is now the third time GEICO has denied coverage to Mr. Dunst without a reasonable basis. The first was with respect to the hit and run driver exclusion upon which GEICO sued Mr. Dunst without first doing a full, fair and objective investigation. The second was GEICO's claim in that same lawsuit that there was no coverage under the personal umbrella policy, despite GEICO's full knowledge of the *Holderness* opinion and the resulting coverage for Mr. Dunst. It is well past time for GEICO to start meeting its fiduciary duties to Mr. Dunst under all three policies. We ask that GEICO immediately acknowledge that Mr. Dunst is entitled to UIM coverage under the auto policy.

We also ask that GEICO promptly adjust Mr. Dunst's claim and advise him of its evaluation. To that end, we are enclosing a complete set of medical records and medical bills, along with a summary of the medical bills, which total $253,875.48. We believe these records are complete, with the exception of his Medco records for prescriptions since approximately February 2005. When we finally are able to obtain those records, we will forward them as well.

Very truly yours,

ATKINSON, CONWAY & GAGNON

By /s/ W. Michael Moody
W. Michael Moody

WMM/jga
Enclosures
80890/7443.1

Exhibit 7
Page 1 of 3 Pages

<u>Dunst/Torres</u>
7443.1

## Gary Dunst Medical Expenses

### Summary

| Provider | Amount |
|---|---|
| Ak. Cardiothoracic Surgery | 566.00 |
| Ak. Emergency Medicine | 438.00 |
| Ak. Hospitalist Group | 1,830.00 |
| Ak. Radiology Associates | $7,969.00 |
| ADL, Inc. (Anc. Diagnostic Lab) | 115.00 |
| Anc. Fire Dept. | 610.00 |
| Anc. Foot & Ankle | 2,222.00 |
| Matthew Berensen, MD | 12,230.00 |
| Buff Burtis | 342.00 |
| Wayne Downs, MD | 500.00 |
| Michael Eaton, MD | 4,498.00 |
| Geneva Woods Health Care | 99.44 |
| Harbir Makin, MD | $4,693.76 |
| Peter Marbarger, MD | $155.00 |
| Medco | 325.82 |
| Kenneth Pervier, MD | 140.00 |
| Providence Anc. Anesthesia | 672.00 |
| Providence Behavioral Health | 1,345.00 |
| Providence Home Health Care | 2,926.00 |
| Providence Hospital and P.T. | $209,855.46 |
| Providence Imaging Center | 1,202.00 |
| Pulmonary Associates | 879.00 |
| Judith Whitcomb | 262.00 |
|  | $253,875.48 |

Exhibit 7
Page 2 of 3 Pages