```
Mark E. Wilkerson
Kenton L. Robinson
310 K Street, Suite 405
Anchorage, Alaska 99501
P: 907-276-5297
F: 907-276-5291
Attorneys for Plaintiff GEICO
```

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | |
| GARY DUNST, ) ) | |
| Defendant. ) ) | Case No. A04-0272 CV (JWS) |

**OPPOSITION TO MOTION FOR ATTORNEY'S FEES**

**I. INTRODUCTION**

On October 14, 2004, Dunst's attorney Moody sent a letter to GEICO objecting to GEICO's reservation of rights and demanding UM coverage notwithstanding the lack of identification of the adverse driver and lack of physical contact.[1] By follow-up faxed letter the next day, Moody made it plain he was demanding all potential UM benefits without identifying the adverse driver.[2] GEICO responded to Moody's letters setting forth GEICO's position with respect to Alaska Statutes and the

---

[1] Moody letter dated October 14, 2004, attached as Exhibit A.
[2] Moody letter dated October 15, 2004, attached as Exhibit B.

policy language,[3] and thereafter filed this declaratory action seeking a finding that no coverage was available without the identification of the adverse driver.[4]

GEICO has not unnecessarily pursued this matter before the U.S. District Court. In fact, it has done the opposite; researching the law and withdrawing issues before answer, dismissing the declaratory judgment action without this court's intervention once Dunst met his burden of proof, and agreeing to stack policies without litigation.

There was only one issue litigated in this court, and GEICO prevailed on that issue. Dunst is not a prevailing party entitled to fees. Alternatively, Dunst is entitled only to limited attorney fees; he is not entitled to any enhanced fees.

**II.   LEGAL STANDARD**

The pivotal issue is whether Dunst is the prevailing party. GEICO brought the declaratory action and this court held that GEICO's action was appropriate. The U.S. Supreme Court has held that a prevailing party is one who has been awarded some relief by a court, such as an enforceable judgment on the merits. <u>Buchannon Bd. & Care Home, Inc. v. West Virginia Dept of Health</u>

---

[3] Wilkerson letter dated November 12, 2004, attached as Exhibit C.
[4] Once Dunst did identify the adverse driver, GEICO withdrew its declaratory judgment action and sought to adjust the matter. *See* Wilkerson letter dated November 9, 2005, attached hereto as Exhibit D.

& Human Resources, 532 U.S. 598, 603-4; Oil, Chemical and Atomic Workers Int'l Union, AFL, CIO v. Dept of Energy, 888 F.3d 452, 457 (D.C. Cir. 2002). A district court has discretion and need not award every expense incurred in the conduct of a case to an arguably winning litigant. Marcoin, Inc. v. Edwin K. Williams & Co., Inc., 88 F.R.D. 588 (E.D.Va. 1980). Absent bad faith or vexatious conduct, an award of enhanced attorney fees is manifestly unreasonable and constitutes an abuse of discretion. *See* Atlantic Richfield Company v. State of Alaska, 723 P.2d 1249, 1252 (Alaska 1986). In no event shall an attorney fee award be used as a means to penalize a party. Id. at 1252.

**III. DUNST HAD THE BURDEN TO IDENTIFY ADVERSE DRIVER**

The claimant, not the insurer, bears the burden of proving that another driver is uninsured or underinsured. Generally, for an insured to recover uninsured motorist benefits he must prove that neither the owner nor the operator of the other vehicle had applicable liability insurance. *See* 24 Appleman on Insurance 2d, Section 147.4 (Matthew Bender 2004). In Alaska, the insured may be deemed to meet this burden if the adverse driver is unknown and there is physical contact. *See* AS 28.22.201(b), AS 28.20.445(f); *Wold*, 52 P.3d at 157-60. Both Dunst and GEICO went to great but unsuccessful lengths to identify the adverse driver. GEICO was willing to, and did, share information and pursue courses of action cooperatively

3

with Dunst.  Dunst, on the other hand, did not share information with GEICO.  Dunst did not alert GEICO to any of his actions as to the witnesses he was attempting to depose and/or avenues he was attempting to investigate.

Eventually, after the court gave Dunst 90 days to identify the adverse driver, and GEICO agreed (again without court intervention) to an extension of that stay [Docket 17], Dunst finally did identify the adverse driver.  GEICO thereafter withdrew its UM coverage issue,[5] acknowledging, as it always had, that Dunst was covered if the adverse driver was identified.  GEICO's conduct avoided litigation before this court.  It should not form a basis for attorney fees.

**IV.  GEICO'S DECLARATORY JUDGMENT ACTION WAS APPROPRIATE**

Dunst has requested fees related to researching and filing a lengthy Motion to Dismiss [Docket 2].  Dunst argued that this court should decline jurisdiction for a variety of reasons.  After full briefing, the court denied Dunst's motion. [Docket 16].

This jurisdictional issue was the only issue actually litigated before this court.  It involved the vast bulk of Dunst's attorneys' time.  And Dunst did not prevail.  GEICO did.[6]

---

[5] Wilkerson letter dated August 3, 2005, attached as Exhibit E.
[6] *See* Order from Chambers [Docket 16], filed March 1, 2005, attached hereto as Exhibit F.

4

**V.   THE FEES SUBMITTED**

Slottee submitted time associated with researching and drafting the failed Motion to Dismiss totaling 72.1 hours, or $11,896.50.[7] The 72.1 hours spent by Slottee is 90.8% of his total time spent.

Slottee's remaining time, amounting to $1,204.50, was related to the state court actions, not to the litigation before this court. These fees are recoverable, if at all, in the state court actions to which GEICO is not a party. In short, all of Slottee's time was spent on an issue Dunst lost, or in state court actions to which GEICO is not a party.

Moody's time is submitted without any detail. He submits 40 hours, or $10,000, for general supervision of Slottee and paralegal Baker.[8] Thus, the best one can do is extrapolate Moody's time in proportion to those he supervised. If one allocates Moody's time by the same proportion as Slottee billed his time, $9,100 of Moody's time should be allocated to the jurisdiction motion Dunst lost.

Paralegal Baker submitted billings of 157.15 hours. The entirety of Baker's fees are related to the state court actions. None relate to any issue litigated in this court. Baker's fees,

---

[7] This includes 22.7 hours spent researching UM coverage before the declaratory judgment action was filed on November 12, 2004.
[8] Moody's Affidavit references taking four depositions in the state court actions, but no time is broken out for these tasks.

if recoverable, should be addressed by the state court before which he was working.

**VI.   ARGUMENTS FOR ENHANCED FEES**

Dunst argues for enhanced fees claiming GEICO should be punished for not investigating enough to help Dunst; for withdrawing one disputed issue before an answer was filed; and for agreeing to stack coverage without litigation.

**A.   GEICO Rigorously Pursued the Identity of the Adverse Driver**

Contrary to Dunst's legal and factual mischaracterization,[9] GEICO spent substantial time and effort attempting to identify the adverse driver.  After GEICO received its first notice of the claim on June 9, 2004, GEICO undertook the following in its investigation of Dunst's claim:

1.   GEICO asked for a copy of the Anchorage Police Department's Police Report (June 9, 2004);

---

[9] Dunst cites Great Divide in support of a position that an insurance company has a duty to "diligently search for evidence which supports its insured's claim," page 12 of Motion for Attorney's Fees citing Great Divide Ins. Co. v. Carpenter, 79 P.3d 599, 608 (Alaska 2003).  The language cited by Dunst was pulled from an excerpt of the jury instructions given by the lower court.  But, the Great Divide appellate court specifically stated that the "legal validity of the instructions is assumed" for that case only.  The partial instruction cited is not precedent for what an insurer's duties are when a claim is under investigation.

    2.    Attempted to speak to Matt Dunst, son of Gary Dunst, concerning information about the accident (June 9, 14, 16, 2004);

    3.    On June 16, 2004, GEICO was advised that the adverse driver might not have stayed at the scene of the accident (June 16, 2004);

    4.    Contact with Dunst's sister, Barbara Jensen, as to status of Dunst (June 28, 2004);

    5.    Contact and interview with Tanner Young re: accident (July 2, 2004);

    6.    Contact and interview of Douglas Smith re: accident (July 2, 2004);

    7.    Left voice message for APD Officer Gregory Witte (July 2, 2004);

    8.    Officer Witte left a voice message indicating that the driver of the SUV was not involved in the accident and her information, if written down, could not be found (July 2, 2004);

    9.    Called APD, asked for Officer Witte; obtained voice mail in effort to identify SUV driver (July 7, 2004);

    10.    Called Metro Reporting for confirmation that the entire police report had been located (July 13, 2004);

    11.    Called APD, asked for Officer Witte; obtained voice mail in effort to identify SUV driver (July 14, 2004);

12. Called Kathy with Metropolitan Reporting and was advised that no page of the police report was missing and that unless an officer re-filed a report with additional information, then GEICO had all that could be obtained (July 15, 2004);

13. Additional contact with defendant; he is able to talk but does not remember any event leading up to accident (July 23, 2004);

14. Took recorded statement of Tanner Young (July 23, 2004);

15. Took recorded statement from Douglas Smith (July 23, 2004);

16. Called APD, dispatch informed T. Swindler that Officer Witte is not available (July 26, 2004);

17. Called APD, informed that Officer Witte's computer lost the police report and that he was told to re-write the report by a sergeant (July 26, 2004);

18. Sergeant Allen of APD called and said an updated report would be forthcoming from Officer Witte (July 27, 2004);

19. GEICO was informed that officer other than Officer Witte must have SUV driver information (July 27, 2004);

20. GEICO requested APD photographs from the scene (July 28, 2004);

21. Called APD, left message for Officer Witte asking that the SUV license plates be run as identified in the police photographs (July 30, 2004);

22. Officer Witte left voice mail that APD does not have dashboard cameras and no claimant information because she was not involved (August 2, 2004)[10];

23. Called Sergeant Rohwer re police report and SUV driver information (August 6, 2004);

24. Sergeant Rohwer informs GEICO that a supplemental police report is ready (August 9, 2004);

25. Informed by Sergeant Rohwer that there were additional handwritten statements attached to the report that should have been produced (August 16, 2004);

26. Metropolitan Reporting indicates difficulty in obtaining the updated report as APD request forms have changed (September 1, 2004);

27. Called Tanner Young and asked what other insurance company had called him, but he could not remember (September 20, 2004);

28. GEICO's review of photographs and enlargement of SUV plate number to identify vehicle (November 11, 2004);

---

[10] A transcript of a recorded voice mail message left by Officer Witte of the Anchorage Police Department is attached as Exhibit G.

29. Retention of private investigator for investigation of accident location and interview of witnesses (December 13, 2004).

None of the above avenues provided sufficient information to identify the adverse driver. In fact, at one point, GEICO errantly identified a witness as the adverse driver. GEICO promptly shared this information with Dunst.[11] GEICO followed up and ultimately confirmed she was not the adverse driver.

Throughout its investigation, GEICO kept Dunst apprised of its efforts to identify the driver. To this end, GEICO provided all of its information to Dunst. Additionally, GEICO repeatedly asked Dunst for any suggestions of other reasonable investigative actions that might be pursued. Dunst did not respond.

Instead, Dunst pursued subpoenas and scheduled depositions in a state court action without notice to GEICO. Dunst chose to pursue the depositions in the state court action, electing to forego the subpoena powers of this court.

Dunst's state court depositions resulted in locating the adverse driver. Contrary to what the police told GEICO, there was a notepad of an APD officer with the driver's name noted. GEICO had previously pursued this avenue of information, but was repeatedly told by the Anchorage Police Department that the

---

[11] Wilkerson letter dated March 15, 2005, attached as Exhibit H.

adverse driver's information was not available, nor had it been documented.[12] The fact that Dunst eventually succeeded in identifying the adverse driver does not render GEICO's efforts inadequate. It certainly does not justify enhanced attorney fees, especially since the identification issue was never litigated.

### B. *Holderness* Issue

Dunst argues that GEICO's agreement to provide an extra $1 million in umbrella coverage without litigation (in fact before answer) warrants enhanced fees. Dunst neglects to mention that GEICO reserved its rights on the issue, researched the issue[13] and then withdrew it before any litigation, or even an answer was filed. [Docket 6]. Because this issue was resolved and withdrawn prior to Dunst even filing his answer, it was never before the court. Dunst cannot assert that he was the prevailing party on an issue not litigated; and he certainly is not entitled to enhanced fees on this issue.

### C. Insurance Policy Stacking

Dunst also argues that GEICO asserted there was no stacking of Dunst's motorcycle and automobile policies because of AS 28.20.445. (*See* Motion, page 5.) This is another issue resolved amicably between the parties and thus not presented to

---

[12] *See* Exhibit G.
[13] *See* Exhibit D; *see also* letter dated December 3, 2004, attached as Exhibit I. *Also see* attached Exhibit E.

the court for determination. GEICO set forth the statute limiting stacking and inquired as to Moody's interpretation.[14] Moody responded arguing that the statute did not apply because the two policies were issued by separate GEICO subsidiaries. Without waiving its position, GEICO agreed to provide the stacked coverage.[15]

It is impossible to discern from the vague billing records provided the amount of time Moody's office spent on this issue, but it could not have been more than a few hours. This issue, like the <u>Holderness</u> issue, was resolved without litigation or court intervention, Dunst should not be awarded prevailing party fees, and certainly not enhanced fees.

**VII. CONCLUSION**

Because GEICO, not Dunst, was the prevailing party on the only matter litigated before this court, Dunst is not entitled to prevailing party attorney fees. Alternatively, Dunst should only be awarded limited fees. Dunst is not entitled to any enhanced fees.

---

[14] *See* Exhibit C.
[15] *See* Exhibit D.

DATED this 13th day of February 2006.

        WILKERSON, HOZUBIN & BURKE
        Attorneys for Plaintiff


BY: s/Mark E. Wilkerson
    Mark E. Wilkerson
    310 K Street, Suite 405
    Anchorage, Alaska 99501
    P: 907-276-5297
    F: 907-276-5291
    Email: mark@wilkersonlaw.net
    AK Bar No. 8310157

WILKERSON, HOZUBIN & BURKE


BY: s/Kenton L. Robinson
    Kenton L. Robinson
    310 K Street, Suite 405
    Anchorage, Alaska 99501
    P: 907-276-5297
    F: 907-276-5291
    Email: kent@wilkersonlaw.net
    AK Bar No. 0410056

**CERTIFICATE OF SERVICE**

I hereby certify that on the
13th day of February 2006, a true
and correct copy of the foregoing
was electronically mailed to the following:

W. Michael Moody, Esq.
420 L Street, Suite 500
Anchorage, AK  99501

WILKERSON, HOZUBIN & BURKE

By:   s/Kenton L. Robinson
2000/264/plead/Fees-Opposition

13