

RECEIVED MAR -2 2005 WILKERSON, HOZUBIN & BURKE

FILED MAR 0 1 2005 UNITED STATES DISTRICT COURT, DISTRICT OF ALASKA

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>GARY DUNST,<br><br>    Defendant. | A04-272 CV JWS<br><br>**ORDER FROM CHAMBERS**<br><br>[Re:   Motion at Docket 2] |

## I. MOTION PRESENTED

At docket 2, Gary Dunst moves to dismiss the complaint for declaratory judgment by Government Employees Insurance Company ("GEICO"). The motion has been fully briefed. Oral argument has been requested, but would not be of assistance to the court.

## II. BACKGROUND

Dunst was injured in a traffic accident on June 3, 2004.[1] He was riding his motorcycle on International Airport Road in Anchorage, Alaska, when another vehicle pulled in front of him.[2] To avoid hitting the other vehicle, he braked hard and his

---

[1] Doc. 1 at 3.

[2] Id.

motorcycle fell down.[3] Although Dunst managed not to hit the other vehicle, he was injured when his motorcycle skidded along the road.[4] The other vehicle stopped, and its driver talked to the police when they arrived, but did not leave any identifying information.[5] Since the accident, Dunst has not been able to identify her.[6]

Her identity is important because it is relevant to determining whether Dunst's injuries are covered by his insurance policy. At the time of the accident, Dunst was insured by GEICO.[7] His policy included an uninsured motorist provision.[8] Under Alaska law, that provision must cover injuries Dunst sustains in an accident involving physical contact between him and a vehicle whose owner and operator are unidentified.[9] Without physical contact, the uninsured motorist provision covers Dunst's injuries only if it can be shown that the owner and operator of the other vehicle did not have motor vehicle insurance.[10] Because Dunst's accident did not involve physical contact with the other vehicle, and the identities and insurance status of the vehicle's operator and owner are unknown, GEICO argues Dunst's injuries are not covered under his policy.

For his part, Dunst maintains the other driver's identity may yet be discovered. According to Dunst, there is evidence she had been playing softball before the accident at fields near the accident site.[11] Based on that evidence, Dunst filed a petition in Alaska Superior Court seeking permission to depose representatives of the organizations controlling the fields; employees of the State of Alaska Department of

---

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.* at 5.

[8]Doc. 2, ex. 3 at 7.

[9]ALASKA STAT. § 28.20.445(f).

[10]*Id.* § 28.20.440(b)(3).

[11]Doc. 2 at 3-4.

Motor Vehicles; and Anchorage Police Department officers and other witnesses to the accident.[12] Dunst believes deposing those people will uncover rosters of teams playing the day of his accident and, by process of elimination, the name of the driver of the other vehicle involved in his accident.[13] On December 2, 2004, Alaska Superior Court Judge Mark Rindner issued an order granting Dunst's petition.[14]

The court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because GEICO and Dunst are of diverse citizenship and the amount in controversy exceeds $75,000.

### III. DISCUSSION

#### A. This Is an Actual Controversy

Under the Declaratory Judgment Act ("DJA"), the court may decide legal rights between parties in "a case of actual controversy within [the court's] jurisdiction."[15] An actual controversy is a dispute that "is appropriate for judicial determination."[16] A dispute is appropriate for judicial determination if the parties' legal rights can be determined from the facts alleged in the complaint and their interests are adverse.[17] A dispute is not appropriate for judicial determination if it would require an opinion "advising what the law would be on a hypothetical state of facts."[18]

The dispute between GEICO and Dunst is fit for judicial determination because their legal rights can be determined based on the facts alleged in GEICO's complaint and their interests are adverse. GEICO alleges Dunst was injured in an accident in which there was no physical contact between his motorcycle and a vehicle whose

---

[12] *Id.*, ex. 2.

[13] *Id.*, ex. 2 at 4.

[14] *Id.*, ex. 4.

[15] 28 U.S.C. § 2201(a) (1994).

[16] *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) (citing *Osborn v. Bank of United States*, 22 U.S. 738 (1824)).

[17] *Id.* at 240-41.

[18] *Id.* at 241.

owner and operator have not been identified.[19] Dunst's policy with GEICO will cover his injuries if they were sustained in an accident involving physical contact between his motorcycle and a vehicle whose operator and owner are not identified.[20] Thus, based on GEICO's alleged facts, it is possible to determine whether Dunst is entitled to coverage under his policy. Also, because GEICO and Dunst disagree about whether he is entitled to coverage, their interests are adverse.

To support his argument that this is not an actual controversy, Dunst cites the fact he is still trying to identify the driver of the vehicle he swerved to avoid. He asserts that, to decide GEICO's declaratory judgment action, the court would have to assume her identity will remain unknown.[21] Because he believes her identity will be discovered eventually, Dunst maintains the facts GEICO alleges are "contingent and hypothetical,"[22] and, therefore, its action is not ready for judicial review.

Dunst's argument is not persuasive because its premise is his dispute with GEICO might never be fit for judicial review. According to Dunst, his dispute with GEICO is not ready for judicial review until the other driver's identity is determined. But until then, Dunst would continue trying to convince GEICO he is entitled to coverage, and GEICO would continue to deny it. That is a controversy fit for judicial resolution.

**B. The Court Will Not Decline to Hear GEICO's Action**

Under the DJA, the court has discretion to entertain an action involving an actual controversy.[23] If a party moves the court to decline to hear the action, and the court denies the motion, it must explain the reasons for its decision.[24] The court should consider whether: 1) it must decide state law issues; 2) the non-moving party is forum

---

[19] Doc. 1 at 3.

[20] *Id.*, ex. A at 7.

[21] Doc. 2 at 9.

[22] *Id.*

[23] *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (quoting *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962)).

[24] *Id.* at 1221.

shopping; 3) the action will settle all aspects of the controversy; 4) the action will lead to duplicative litigation; 5) the action will entangle the court with the state court system; 6) the action will inconvenience the parties; and 7) whether other remedies are available and convenient.[25]

### 1. State Law Issues

Dunst asserts this action presents a difficult question of Alaska law. Under Alaska's Motor Vehicle Safety Responsibility Act ("MVSRA"), in accidents between insured drivers and vehicles whose owners and operators are unknown, the insured drivers' injuries are covered by their uninsured motorist policies only if there was physical contact between them and the other vehicles.[26] In *Wold v. Progressive Preferred Insurance Co.*,[27] the Alaska Supreme Court held that the MVSRA requires physical contact even when there is other evidence that other vehicles were involved in the accidents.[28] Dunst argues this case presents the question whether the evidence that another vehicle was involved in his accident is strong enough to substitute for the MVSRA's physical contact requirement.[29]

This case is not sufficiently distinct from *Wold* to present a difficult question of Alaska law. In *Wold*, there was no physical contact between the insured's vehicle and the other vehicle involved in the accident, but there was evidence of the other vehicle's involvement.[30] In this case, there was no physical contact between Dunst's motorcycle and the other vehicle involved in his accident, but there is evidence of the other vehicle's involvement. Because this case's facts are so similar to *Wold*'s, the questions it presents have already been answered by the *Wold* court.

---

[25]*Id.* at 1225, 1225 n.5.

[26]ALASKA STAT. § 28.20.445(f).

[27]52 P.3d 155 (Alaska 2002).

[28]*Id.* at 158-61.

[29]Doc. 8 at 12, n.5.

[30]52 P.3d at 159.

F
5  8

Dunst tries to create a new question by pointing out the *Wold* court's observation that it would interpret the MVSRA differently if its legislative history supported another meaning.[31] He offers a document he claims is relevant to the MVSRA and indicates his evidence of the other vehicle's involvement is sufficient to substitute for the MVSRA's physical contact requirement.[32] Dunst's attempt at distinguishing *Wold* is not persuasive because of the *Wold* court's conclusion that the MVSRA's legislative history does not support any exceptions to the physical contact requirement is final.

### 2. Forum Shopping

There is no evidence that GEICO rushed this action simply to get into federal court. Dunst was injured on June 3, 2004.[33] GEICO did not file its complaint until November 12, 2004.[34] Between those dates, it and Dunst tried to identify the driver of the other vehicle involved in Dunst's accident.[35]

### 3. Settling All Aspects of the Controversy

GEICO's declaratory judgment action will settle all aspects of the controversy between it and Dunst. The only issue between the parties is whether Dunst is entitled to coverage under his policy with GEICO. Because GEICO's declaratory judgment action requires the court to decide that issue, it will settle all aspects of GEICO's controversy with Dunst.

### 4. Entanglement with State Courts

Hearing this action will not entangle the court with the Alaska court system. Although Dunst points out there is what he describes as a "parallel state proceeding,"[36]

---

[31] *Id.* at 161.

[32] Doc. 8, ex. 7.

[33] Doc. 1 at 3.

[34] *Id.* at 1.

[35] Doc. 2 at 3-4; Doc. 5 at 1.

[36] Doc. 8 at 15.

it does not involve GEICO,[37] and there is no reason to believe it would require this court's intervention.

### 5. Duplicative Litigation

Hearing this action will not lead to duplicative litigation because, as noted above, this action will settle all aspects of the controversy between GEICO and Dunst, and there are no proceedings between the parties in other courts.

### 6. Parties' Convenience

Dunst offers no evidence that he will be inconvenienced by defending against GEICO's action in this court. The dispute must be resolved in some court. This court is as convenient to Dunst as would be the state court.

### 7. Availability of Other Remedies

A declaratory judgment action is a common remedy in an insurance-coverage dispute.[38] Dunst does not suggest that a more appropriate remedy exists. The court is not aware of an alternate remedy.

The court has considered all seven factors pertinent to deciding whether to entertain the pending declaratory judgment action. Upon consideration of those factors, the court concludes that it is appropriate to hear GEICO's declaratory judgment action.

### C. GEICO's Action Will Be Stayed

While the court will hear this action, the court is concerned that Dunst be afforded adequate time to identify the other driver. Dunst should have more time to discover the other driver's identity, because discovery of her identity could change the outcome in this action. If she is identified, and it turns out neither she nor the owner of the vehicle she was operating have motor vehicle insurance, Dunst's policy with GEICO may cover his injuries despite the fact there was no physical contact between his

---

[37] Dunst filed a petition in Alaska Superior Court seeking permission to depose people who might help him determine the identity of the driver of the other vehicle involved in his accident. Doc. 2, ex. 2 at 1. Through those depositions, he hopes to identify the driver of the other vehicle. Once her identity is known, she "will be the defendant in the [personal injury] action" Dunst anticipates filing against her. *Id.*, ex. 2 at 2.

[38] 10B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2760 (3d ed. 1998).

motorcycle and the vehicle she was operating. While Dunst has had since June of 2004 to identify her, he only recently received permission to take depositions that may help him with that task. Consequently, the court will stay this action to give him a reasonable amount of time to complete his investigation. In the court's view, a stay through June 3, 2005, provides Dunst with a reasonable amount of time in which to complete his investigation. That date would be a full year after the accident and six months from the date that he obtained authorization to conduct depositions.

### IV. CONCLUSION

Based on the analysis set forth above, the court concludes as follows: (1) GEICO may maintain its declaratory judgment action because a controversy exists between it and Dunst; (2) the court should not decline to hear GEICO's action; and (3) GEICO's action should be stayed until June 3, 2005, to afford Dunst adequate time to complete his investigation.

The motion at docket 2 is **DENIED**, and this case is **STAYED** until **June 3, 2005**, or such earlier date as the parties may stipulate to lift the stay (as would be appropriate if the other driver's identity were in fact determined prior to June 3, 2005).

DATED at Anchorage, Alaska, this 25th day of February 2005.

/s/ JOHN W. SEDWICK
UNTIED STATES DISTRICT JUDGE

A04-0272--CV (JWS)   3-1-05
-----------------------------------------
W. MOODY (ATKINSON)
S. MACK