W. Michael Moody
Christopher J. Slottee
ATKINSON, CONWAY & GAGNON
Attorneys for Gary Dunst
420 L Street, Suite 500
Anchorage, Alaska 99501-1989
Phone: (907) 276-1700
Fax: (907) 272-2082
wmm@acglaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>GARY DUNST<br><br>    Defendant. | Case No. A04-0272 CV (JWS)<br><br>**REPLY TO OPPOSITION TO MOTION FOR ATTORNEY'S FEES** |

**I. INTRODUCTION**

   By ignoring controlling Alaska case law, misrepresenting the status of this case, and turning basic logic on its head, GEICO reaches the startling conclusion that it prevailed in litigation that began with GEICO claiming that Gary Dunst was entitled to no UM/UIM coverage, and ended with GEICO conceding that Dunst is entitled to $1,600,000 in UM/UIM coverage. When controlling Alaska case law and principles of reason and logic

are applied, it is clear that Gary Dunst is the prevailing party and that the Court should award him enhanced attorney's fees.

## II.     GEICO MISREPRESENTS THE STATUS OF THIS CASE

In its opposition, GEICO misrepresents the status of this case. Specifically, GEICO incorrectly asserts that it "dismiss[ed] the declaratory judgment action without this court's intervention once Dunst met his burden of proof." Opposition, p. 2 (Docket 32) (emphasis added). See also Opposition, p. 2 n. 4 (Docket 32) ("Once Dunst did identify the adverse driver, GEICO withdrew its declaratory judgment action and sought to adjust the matter.") (emphasis added).

GEICO's assertion that it "dismiss[ed]" or "withdrew" the declaratory judgment action is false. The docket in this case conclusively establishes that GEICO has not filed any dismissal of its declaratory judgment action. See Docket. Nor could GEICO unilaterally dismiss its declaratory judgment action once Dunst filed his Answer and Counterclaim. Fed. Civ. R. Pro. 41(a)(1)(i) (plaintiff may file notice of voluntary dismissal only before its complaint is answered by the adverse party). Once Dunst answered GEICO's complaint, GEICO could only dismiss its complaint with a stipulation signed by all parties or with the permission of the Court. Fed. Civ. R. Pro. 41(a)(1)(ii). Counsel for Dunst has not signed or agreed to sign any stipulation dismissing GEICO's declaratory judgment action and GEICO has not asked the Court for permission to dismiss its

complaint.[1]  GEICO's statement that it dismissed the declaratory judgment action once Dunst found Ms. Torres is false.

The reason for GEICO's misrepresentation is clear.  In determining who is the prevailing party, GEICO wants the Court to focus only on Gary Dunst's motion to dismiss and ignore the fact that Dunst prevailed on every substantive issue raised by both GEICO's declaratory judgment action and Dunst's counterclaim.  The Court should see through GEICO's obfuscation and recognize the true state of affairs.  Namely, that Dunst filed a counterclaim against GEICO seeking a judgment declaring that he is entitled to $1,600,000 in UM/UIM coverage and that GEICO ultimately conceded that Dunst is entitled to $1,600,000 in UM/UIM coverage.

### III. ALASKA LAW CONTROLS DUNST'S MOTION FOR ATTORNEY'S FEES

GEICO's opposition relies almost entirely on federal law and contains almost no discussion of applicable Alaska law on who is the prevailing party. (See e.g. Opposition, pp. 2-3).  This Court's jurisdiction, however, is based on diversity.  (See First Amended Complaint, ¶ 4) (Docket 7).  As such, there can be no dispute that Alaska Civil Rule 82 controls.  Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir. 1979) (Alaska Civil Rule 82

---

[1] Even if GEICO did dismiss its declaratory judgment action as it claims, which it did not, Dunst would still be entitled to Alaska Civil Rule 82 attorney's fees.  See Hart v. Wolff, 489 P.2d 114, 119 (Alaska 1971) (claim dismissed without prejudice due to violation of discovery orders; court affirmed award of Alaska Civil Rule 82 attorney's fees even though dismissal was without prejudice); Bovee v. LaSage, 664 P.2d 160, 164 (Alaska 1983) (Alaska Civil Rule 82 attorney's fees may be awarded when complaint is voluntarily dismissed with prejudice); Municipality of Anchorage v. Baugh Construction & Engineering Co., 722 P.2d 919, 929 (Alaska 1986) (same).

governs in federal court cases based on diversity because "[i]n a diversity action the question of attorney's fees is governed by state law.") See also Ryan v. Sea Air, Inc., 902 F. Supp. 1064, 1070 (D.Alaska 1995) (Alaska Civil Rule 82 is "binding in diversity cases brought in this Court.")

In applying Alaska Civil Rule 82, including determining who is the "prevailing party," the Court must apply the principles established by the Alaska Supreme Court. See Evan v. Employers Mut. Liability Ins. Co. of Wisconsin, 391 F.Supp. 1230, 1231 (D.Alaska 1975) (in "a diversity action the court must apply the law of Alaska as interpreted by the Alaska Supreme Court.") Therefore, the cases cited by GEICO[2] are not controlling, persuasive, or relevant to this case.

## IV. DUNST IS THE PREVAILING PARTY ON THE MAIN ISSUES IN THE LITIGATION

GEICO erroneously contends that it is the prevailing party because the Court denied Gary Dunst's motion to dismiss. The Alaska Supreme Court rejected this argument in Gold Bondholders Protective Council v. Atchison, Topeka and Santa Fe Railway Company, 658 P.2d 776 (Alaska 1983), and Belluomini v. Fred Meyer of Alaska, Inc., 993 P.2d 1009 (Alaska 1999).

The plaintiffs in Gold Bondholders Protective Council appealed the trial court's award of Alaska Civil Rule 82 attorney's fees. Id. at 779. The plaintiffs complained

---

[2] Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598 (2001), Oil, Chemical and Atomic Workers Int'l Union, AFL, CIO v. Dept. of Energy, 488 F.3d 452 (D.C.Cir. 2002), and Marcoin, Inc. v. Edwin K. Williams & Co., Inc., 88 F.R.D. 588 (E.D. Va. 1980).

that the trial court had improperly awarded the defendant fees incurred in connection with jurisdictional arguments on which the defendant had not prevailed. Id. The Alaska Supreme Court rejected this argument, stating:

> This contention is untenable. Rule 82(a) does not require that attorneys' fees be calculated with reference to the disposition of individual issues. Rather, it expressly provides that a reasonable award of fees shall be made, at the trial court's discretion, to the prevailing party. The clear meaning of that provision is that the party who prevails on the principal dispositive issue is entitled to reasonable costs calculated according to the trial court's discretion. We refuse to now alter the purview of Rule 82 by requiring the niceties in apportionment urged by the Bondholders.

Id. at 779 (emphasis added). Similarly, in Belluomini the defendant won on a directed verdict. Belluomini, 993 P.2d at 1012. The plaintiff appealed the trial court's award of attorney's fees, arguing that the award improperly included fees the defendant had incurred in bringing several unsuccessful motions for summary judgment. Id. at 1017. Citing to Gold Bondholders Protective Council, the Alaska Supreme Court again rejected the plaintiff's argument, holding that the defendant could properly recover fees incurred in bringing the unsuccessful motions for summary judgment because it had ultimately prevailed in the litigation. Id. These cases demonstrate that rather than looking to the resolution of individual motions to determine who is the prevailing party, the Alaska Supreme Court has instructed the trial courts to look at the litigation as a whole and determine which party prevailed based on the substantive issues raised by the pleadings.[3] Hickel v. Southeast

---

[3] Using this approach, the Alaska Supreme Court has held that a party who defeats a claim of great potential liability may be the prevailing party even if the other side is successful in

Conference, 868 P.2d 919, 925 n. 7 (Alaska 1994) (in order to be prevailing party, litigant must succeed on main issues in the case, although it does not need to prevail on every subsidiary issue.)

Dunst prevailed on every substantive issue raised by GEICO's declaratory judgment action and Dunst's counterclaim. The "principal dispositive issue[s]" raised by those pleadings were: (1) did the hit and run exclusion apply; (2) was Dunst entitled to UM/UIM coverage under his motorcycle, automobile, and umbrella; and (3) may those coverages be stacked. These issues have been resolved in Dunst's favor, with GEICO conceding that the hit and run exclusion does not apply because Dunst found Ms. Torres, that Dunst is entitled to UM/UIM coverage under his motorcycle, automobile, and umbrella policies, and that Dunst is entitled to stack those coverages for a total of $1,600,000 in UM/UIM coverage available for injuries suffered in his motorcycle accident. Dunst is the prevailing party under controlling Alaska Supreme Court precedent. Gold Bondholders Protective Council, 658 P.2d at 779.

---

receiving some affirmative recovery. See Alaska Placer Co. v. Lee, 553 P.2d 54, 63 (Alaska 1976) (litigant may be prevailing party if he is successful with regard to main issue of the action, even if the other side receives some affirmative recovery); Hutchins v. Schwartz, 724 P.2d 1194, 1204 (Alaska 1986) (defendant who faced a potential liability of $275,000 but was required to pay only $1,937 less 40 percent, was the prevailing party under Alaska Civil Rule 82); Owen Jones & Sons, Inc. v. C.R. Lewis Co., 497 P.2d 312, 314 (Alaska 1972) (judgment entered against defendant for $7,363.12; defendant was prevailing party under Alaska Civil Rule 82 because defendant had defeated plaintiff's claim for $178,449).

## V. DUNST IS THE PREVAILING PARTY EVEN THOUGH A FORMAL JUDGMENT HAS NOT BEEN ENTERED

In addition to ignoring controlling Alaska case law, GEICO attempts to take unfair advantage of the procedural posture of this case. GEICO claims that it is the prevailing party because Dunst's counterclaims have yet to be judicially resolved and GEICO "withdrew" its declaratory judgment action.

As discussed above, GEICO has not "withdrawn" its declaratory judgment action and the true state of affairs is that Dunst's has a counterclaim pending against GEICO. GEICO has yet to answer only because Dunst agreed that GEICO would not have to file an answer to his counterclaim immediately. While Dunst's claims have not been reduced to judgment yet, that is not because Dunst did not prevail or because Dunst has not pressed his claims, but rather because the parties hoped to avoid the unnecessary expense of litigating issues on which GEICO conceded.[4] This does not change the fact that Dunst is the prevailing party and entitled to Alaska Civil Rule 82 attorney's because GEICO has conceded all of the substantive issues.

The Court, and GEICO, should simply recognize that the practical reality of this case is that Dunst is the prevailing party, despite the absence of a final judgment.[5]

---

[4] In fact, the parties' Joint Status Reports clearly demonstrate that the parties, and the Court, anticipated that the Court could award attorney's fees even without a judgment. See Joint Status Reports (Dockets 19, 21, 23, and 25).

[5] However, if the Court has some concern over whether Dunst can be the prevailing party without reducing his claims to judgment, that concern can be alleviated by requiring GEICO to file an answer to Dunst's counterclaim. Once that answer is filed, Dunst will move for summary judgment on all issues. Dunst will win, given that GEICO has already conceded

Alaska case law permits the Court to make just such a finding. See DeSalvo v. Bryant, 42 P.3d 525, 530-31 (Alaska 2002); Halloran v. State of Alaska, 115 P.3d 547, 551 (Alaska 2005); Jerue v. Millett, 66 P.3d 736, 743 (Alaska 2003).

In DeSalvo, Halloran, and Jerue, the Alaska Supreme Court recognized that if a lawsuit causes the relief sought by the litigant, even if no formal judgment is entered and the case is dismissed as moot, that litigant may be deemed the prevailing party and awarded attorney's fees under Alaska Civil Rule 82. For example, in DeSalvo, the Alaska Supreme Court recognized that "[e]ven without formal judicial relief, many plaintiffs achieve the goals of their litigation." DeSalvo, 42 P.3d at 530. In such circumstances, the "catalyst theory" may be used to determine whether a litigant is a prevailing party."[6] Id. In order to succeed under the catalyst theory, a litigant must show that he achieved some of the benefit sought in bringing the suit and that the suit was a substantial factor or significant catalyst in motivating the defendant to settle. Id.

---

the issues. The Court can then issue a final judgment and Dunst can renew this motion for attorney's fees. Such a process, however, would waste the time of GEICO, Dunst, and the Court, given that the end result is preordained. It would also result in additional expense to both Dunst and GEICO, and increase the amount of Dunst's ultimate attorney's fee award.

[6] Although GEICO does not discuss the catalyst theory in its opposition, GEICO did cite to Buckhannon Board and Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources, 532 U.S. 598 (2001). In Buckhannon, the United States Supreme Court rejected the use of the catalyst theory under federal fee shifting statutes. Id. at 605. Buckhannon, however, does not apply to this diversity case, which is governed by Alaska law. See supra pp. 3-4. Furthermore, the Alaska Supreme Court recognized in DeSalvo that Alaska Civil Rule 82 is not a federal fee shifting statute and that it was not constrained by Buckhannon from utilizing the catalyst theory. DeSalvo, 42 P.3d at 530. See also Halloran, 115 P.3d at 551 n. 15 (recognizing that Buckhannon had rejected the catalyst theory but still applying the catalyst theory to the case before it).

Dunst obtained all of the benefits he sought in bringing his counterclaim against GEICO. Furthermore, Dunst's counterclaim was a substantial factor and significant catalyst in motivating GEICO to concede the issues. GEICO conceded these issues only after the declaratory judgment action was filed and the federal court litigation was stayed. See DeSalvo, 42 P.3d at 530 (the chronology of events is an important element in determining whether a lawsuit was a substantial factors in motivating the defendant's actions). Both parties also knew that if the claims were not resolved that they would return to this Court and that the Court would undoubtedly rule in Dunst's favor, given the clear state of the law.[7]

Dunst's counterclaim was a significant catalyst in motivating GEICO to concede coverages totaling $1,600,000 in UM/UIM coverage, which is the exact relief sought in Dunst's counterclaim. Therefore, the Court should find that Dunst is the prevailing party even though no formal judgment in Dunst's favor has been entered.[8]

---

[7] Given that GEICO conceded the issues, Dunst did not feel that it was necessary to brief the substantive reasons why Dunst is entitled to stack the UM/UIM coverage provided by his motorcycle, automobile, and umbrella policies. If the Court wishes additional briefing on the substantive reasons for why Dunst is entitled to this coverage, Dunst will provide it.

[8] "Once a plaintiff has shown that his or her lawsuit was a catalyst in causing the defendant to act, the plaintiff has made a prima facie case that he or she is the prevailing party and is entitled to attorney's fees. The plaintiff need not prove that the defendant's conduct is required by law or otherwise show the defendant's motivation. Rather, it is only if the defendant can demonstrate that the plaintiff's lawsuit lacked colorable merit or that the defendant's action was wholly gratuitous that the plaintiff is not entitled to recover attorney's fees." DeSalvo, 42 P.3d at 530.

## VI. THE COURT SHOULD AWARD DUNST ENHANCED ATTORNEY'S FEES

GEICO argues that Dunst is not entitled to an award of enhanced attorney's fees. The facts GEICO attempts to rely on to support this argument actually reinforce the fact that enhanced attorney's fees are warranted.

First, GEICO had a legal obligation to research all possible coverage that was available to Dunst, including whether Dunst's umbrella policy provided UM/UIM coverage, before suing it's insured.[9] See 3 AAC 26.060(1) (GEICO must disclose "all relevant benefits and all other provisions of coverage under which a claim may be covered"). In arguing that it acted reasonably in regards to this issue, however, GEICO admits that it did not research whether Dunst's umbrella policy provided UM/UIM coverage until after it had sued Gary Dunst. See Opposition, p. 11 (Docket 32). The fact that GEICO only belatedly researched this coverage issue, after suing its insured and after being informed of its error by counsel for Dunst, does not immunize GEICO from the consequences of its original bad acts.

Furthermore, GEICO wrongfully implies that it discovered its error regarding Dunst's umbrella policy on its own, when the record clearly demonstrates otherwise. In its letter announcing its decision to file a declaratory judgment action, GEICO implied that Dunst's umbrella policy did not provide UM/UIM coverage. (Ex. 1 to Reply). When it filed its declaratory judgment action, GEICO expressly asserted that Dunst's umbrella policy did

---

[9] GEICO clearly knew of the issue raised by Holderness v. State Farm Fire & Cas. Co., 24 P.3d 1235 (Alaska 2001), before filing suit in this case, given that the opinion had been issued three years before GEICO filed its declaratory judgment action.

not provide UM/UIM coverage.  See Complaint (Docket 1).  Soon after that complaint was filed, counsel for Dunst advised GEICO that Dunst's umbrella policy provided UM/UIM coverage pursuant to <u>Holderness v. State Farm Fire & Cas. Co.</u>, 24 P.3d 1235 (Alaska 2001) and AS 21.89.020.  (Ex. 2 to Reply).  On December 3, 2004, <u>after it had filed its declaratory judgment action</u> and in direct response to counsel for Dunst's letter, GEICO stated that it was researching the issue.  (Ex. 3 to Reply).  Soon after, GEICO admitted that it should have conceded before filing its lawsuit, and amended its complaint to drop its assertion that Dunst's umbrella policy did not provide UM/UIM coverage.  <u>See</u> First Amended Complaint (Docket 7).  This chain of events is emblematic of GEICO's unreasonable failures to adequately investigate both the legal and factual issues in this case.

        Second, GEICO attempts to whitewash its deceptive conduct in regards to the stacking issue by deceptively claiming that it merely "set forth the statute limiting stacking and inquired as to Moody's interpretation."  Opposition, p. 12 (Docket 31).  GEICO did much more than that.  GEICO <u>affirmatively</u> claimed that AS 28.20.445(c) barred any stacking of Dunst's GEICO policies because the policies were issued by the same insurer, <u>i.e.</u> GEICO, even though GEICO clearly knew that the policies were issued by different insurers.  <u>See</u> (Exs. 6-7 to Motion for Attorney's Fees) (Docket 29).  It was only when counsel for Dunst caught GEICO in its deception that GEICO conceded the point.  GEICO's deceptive and unreasonable attempt to hide the fact that its policies stacked warrants an award of enhanced attorney's fees.

Third, GEICO's attempt to justify its callous treatment of Dunst by cataloguing its "investigation" simply demonstrates that once GEICO had enough information to deny Dunst coverage, it shut down its investigation. According to its own description, GEICO's investigatory efforts essentially stopped in August of 2004, two months after the accident and three months before GEICO would file its declaratory judgment. See Opposition, p. 10 (Docket 32). Even though the Court granted the parties six additional months to investigate Dunst's accident, GEICO did not take advantage of this opportunity. GEICO's minimal investigatory efforts before filing suit, and its failure to demonstrate that it did anything substantive after the Court granted the parties additional time to conduct an investigation,[10] establish that GEICO did not perform a reasonable investigation.

Finally, GEICO completely fails to address Dunst's argument that both the significance of the matters at stake and the equities of the situation warrant an award of attorney's fees. Either one of those factors justifies an award of enhanced attorney's fees by itself. Tenala, Ltd. v. Fowler, 993 P.2d 447, 451 (Alaska 1999) ("If one or more Rule

---

[10] Although GEICO claims that it hired a private investigator on December 13, 2004, GEICO provides no evidence that it did so and in prior correspondence from GEICO, which purported to detail GEICO's investigatory efforts, GEICO made no mention of retaining a private investigator. See (Exs. 2-3 to Motion for Attorney's Fees). Regardless, GEICO hired that private investigator after it had sued Dunst, hardly fulfilling its duty to investigate diligently Dunst's claim before deciding to sue him. GEICO also offers no evidence that the private investigator did anything of substance when the Court granted the parties additional time to conduct an investigation. In contrast to GEICO's lassitude, counsel for Dunst diligently pursued all avenues of investigation, including reviewing DMV records and interviewing the police officers involved; efforts that eventually located the driver of the Ford Explorer.

82(b)(3) factors justifies departure from the schedule for fee awards, the trial court may base its decision on those factors, without specifically explaining why the other factors are not relevant.") (emphasis added).

GEICO's unreasonable and deceptive conduct, the significance of the matters at stack, and basic equity all favor an award of enhanced attorney's fees. GEICO's revisionist history cannot conceal the true facts of its duplicitous conduct.

## VII. THE AMOUNT OF DUNST'S ATTORNEY'S FEES

GEICO makes two erroneous arguments about the amount of Dunst's attorney's fees. First, ignoring controlling Alaska Supreme Court precedent, GEICO argues that the Court should ignore all fees incurred in connection with Dunst's motion to dismiss because the Court denied that motion. See Opposition, p. 5 (Docket 32). As detailed above, the Alaska Supreme Court has expressly rejected this argument, holding that it would be improper to segregate an award of attorney's fees based on which motions the prevailing party won or lost. See supra pp. 4-6. In fact, the Alaska Supreme Court held that GEICO's contention is "untenable" under Alaska Civil Rule 82. Gold Bondholders Protective Council, 658 P.2d at 779.

Second, GEICO's claim that the remainder of Dunst's attorney's fees are unrecoverable because they were incurred in the "state court action" ignores Alaska case law and the types of work done. The Alaska Supreme Court has held that "attorney's fees under Civil Rule 82 may be awarded only for work that is reasonably related to the matter directly before the trial court." Marsingill v. O'Malley, ___ P.3d ___ 2006 WL 204982, *11 (Alaska

2006) (emphasis added). As support for this proposition, the Alaska Supreme Court quoted <u>Aloha Lumber Corp. v. University of Alaska</u>, 994 P.2d 991 (Alaska 1999), which held that attorney's fees may be awarded for "services in addition to those provided exclusively in the superior court, but only if they <u>closely related to and were made necessary by</u> the superior court proceeding." <u>Id.</u> at 1003 (emphasis added).

GEICO based its declaratory judgment action on the assertion that the driver of the Ford Explorer was unknown. In its First Amended Complaint, and in other pleadings before this Court, GEICO asserted that it was <u>Dunst's</u> burden to identify the driver of the Ford Explorer and establish that she was uninsured. <u>See</u> First Amended Complaint, ¶ 29 (Docket 7) ("GEICO is entitled to a declaration that under the motorcycle and umbrella policies, in the absence of physical contact with the adverse driver and either the covered person directly or with the covered cycle, <u>Dunst has the burden of proving</u> the adverse vehicle and operator were uninsured/underinsured to make a cognizable claim with GEICO.") (emphasis added). In its declaratory judgment action, GEICO sought "entry of an order declaring that <u>the insured bears the burden of production and burden of proof</u> on his claim for UM or UIM benefits." First Amended Complaint, p. 6 ¶ B (Docket 7) (emphasis added). Furthermore, recognizing that ascertaining the identity of the driver of the Ford Explorer was the main issue in this case, this Court stayed the litigation to permit the parties to conduct a thorough investigation. <u>See</u> Order (Docket 16).

Pursuant to the Court's direction, counsel for Dunst conducted a thorough and ultimately successful investigation and the vast majority of Dunst's attorney's fees were

incurred in that investigation. For example, the billing records show that Mr. Baker spent a substantial number of hours researching publicly available DMV files in an effort to create a list of individuals who may have been the driver of the Ford Explorer. Mr. Baker also spent significant time following up leads and working with witnesses in an effort to identify the driver of the Ford Explorer. Similarly, Mr. Moody, Mr. Slottee, and Mr. Baker all spent significant time attempting to obtain files and photographs from the DMV that could be used to identify Ms. Torres. Finally, Mr. Moody and Mr. Baker spent a significant amount of time preparing for and conducting the depositions of the police officers involved in the accident, all in an effort to find Ms. Torres. These depositions eventually led to the identification of Ms. Torres.

This time spent by Mr. Moody, Mr. Slottee, and Mr. Baker was on the main issue presented by GEICO's declaratory judgment action: identifying the driver of the Ford Explorer. Given that GEICO itself claims that it was Dunst's burden to find Ms. Torres and determine whether she had insurance coverage, time spent by counsel for Dunst in an effort to meet that burden and identify the driver of the Ford Explorer is necessarily "closely related to" and "made necessary by" GEICO's declaratory judgment, and therefore recoverable in this action.[11] Aloha Lumber Corp., 994 P.2d at 1003. For GEICO to claim otherwise is the height of disingenuousness.

---

[11] Similarly, the issues raised by Dunst's counterclaim included whether coverage was owed under Dunst's umbrella and automobile policies. As such, the time spent by Mr. Moody and Mr. Slottee in investigating this issue was also "necessarily related" to the litigation before this Court.

Additionally, the vast majority of the time spent by counsel for Dunst cannot fairly be allocated to this "state court action."[12] It was GEICO that placed the identity of the driver of the Ford Explorer as the primary issue in the declaratory judgment action. It was GEICO that contended it was Dunst's burden to identify that driver. Consequently, all of the time spent by counsel for Dunst attempting to find Ms. Torres to meet the burden alleged by GEICO is properly attributed to the declaratory judgment action and recoverable under Alaska Civil Rule 82. Aloha Lumber Corp., 994 P.2d at 1003 (attorney's fees incurred in matters that are closely related or made necessary by litigation are recoverable under Alaska Civil Rule 82).

## VIII.  CONCLUSION

Dunst should be awarded enhanced attorney's fees. Dunst is the prevailing party, having succeeded on every substantive issued raised by the pleadings. Furthermore, Dunst should receive enhanced attorney's fees given GEICO's unreasonable actions, the significance of the matters at stack, and the basic equities of the lawsuit.

---

[12] GEICO also mischaracterizes the nature of the "state court action" in which it contends that counsel for Dunst spent all of their time. About the same time that GEICO filed its declaratory judgment action, Dunst filed a Alaska Civil Rule 27 petition in state court in order to aid his efforts to identify the driver of the Ford Explorer. (Ex. 4). This proceeding was not a lawsuit, as GEICO would have the Court believe, but a means to aid Dunst's investigation. For example, the caption for pleadings in the Alaska Civil Rule 27 proceeding was "In re Dunst." (Ex. 4). There was no defendant, nor could there be, and no costs or attorneys' fees were recoverable. It is utterly ridiculous to contend that Dunst's attorney's fees were incurred in the "state court action" and thus unrecoverable. The fact that Dunst filed an Alaska Civil Rule 27 petition in state court about the same time GEICO filed its declaratory judgment action and before the Court stayed this litigation has no bearing on the amount of Dunst's attorney's fees.

DATED this 24th day of February, 2006.

ATKINSON, CONWAY & GAGNON
Attorneys for Gary Dunst

By   s/ Christopher J. Slottee
Christopher J. Slottee
420 L Street, Suite 500
Anchorage, AK 99501
Phone: (907) 276-1700
Fax: (907) 272-2082
E-mail: cjs@acglaw.com
ABA No. 0211055

I certify that on February 24, 2006,
a copy of the foregoing document
was served electronically on:

Mark E. Wilkerson, Esq.

By   s/ Christopher J. Slottee